# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| JENNIFER L. POLLY, | ) |
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 1:08-CV-158 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Jennifer L. Polly brought this suit to contest a denial of disability benefits by Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). On June 23, 2009, this Court entered an Opinion and Order ("Order") that reversed the Commissioner's denial of benefits and remanded the case to the Commissioner for further proceedings. (Docket # 31.) Polly filed a motion and a supplemental motion to recover attorney fees in the amount of $5,950.80 under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (Docket # 33, 41.) The Commissioner opposes Polly's fee request, arguing that its litigation position was "substantially justified." (Docket # 36.)

For the reasons set forth herein, Polly's motion for attorney fees will be DENIED.

## I. LEGAL STANDARD

Under the EAJA, "[e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). The substantial justification standard requires that the Commissioner show that its position was

grounded in "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000) (citation and internal quotation marks omitted); *see also Stewart v. Astrue,* 561 F.3d 679, 683 (7th Cir. 2009); *Cunningham v. Barnhart*, 440 F.3d 862, 864 (7th Cir. 2006); *Golembiewski v. Barnhart*, 382 F.3d 721, 724 (7th Cir. 2004). The Commissioner bears the burden of establishing that its position was substantially justified. *Stewart*, 561 F.3d at 683; *Cunningham*, 440 F.3d at 863; *Golembiewski*, 382 F.3d at 724.

In making a determination of substantial justification, EAJA fees may be awarded if either the Commissioner's prelitigation conduct or its litigation position was not substantially justified. 28 U.S.C. § 2412(d)(2)(D); *Stewart*, 561 F.3d at 683; *Cunningham*, 440 F.3d at 863 (citing *Golembiewski*, 382 F.3d at 724). However, the court must "make only one determination for the entire civil action." *Golembiewski*, 382 F.3d at 724 (citation omitted). Thus, a court must make a "global assessment" to determine whether the Commissioner was "substantially justified in continuing to push forward at each stage." *Hallmark Constr.*, 200 F.3d at 1081.

## II. DISCUSSION

In the Order, the Court reversed and remanded the Commissioner's decision, concluding that the ALJ erred by failing to satisfy his step five burden of "providing evidence" demonstrating that other work "exists in significant numbers in the national economy" that Polly can perform, pursuant to 20 C.F.R. § 404.1560(c)(2). (Order 13-16.) The Commissioner, however, argues that it was substantially justified in defending the ALJ's decision; his argument is ultimately persuasive.

2

The Commissioner defended two arguments that Polly advanced in her appeal. Specifically, Polly argued that the ALJ: (1) erred by failing to prove that a significant number of jobs exist in the national economy that Polly can perform, and (2) improperly evaluated the opinion of her treating psychiatrist, Dr. Frank Cyran. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 12-18.)

We first turn to the Commissioner's defense of the ALJ's finding that Polly could perform a significant number of jobs in the economy. During the administrative hearing, Polly's attorney questioned the vocational expert ("VE") about his methods in arriving at his estimates of the number of jobs that a person with Polly's residual functional capacity could perform. The VE informed about his method generally, discussing the sources he uses to extrapolate his estimates and explaining that he also uses market surveys and conducts random sampling.

Counsel then attempted to probe further into how the VE arrived at the estimate for hand packager jobs specifically. The ALJ, however, interrupted him, finding that the VE's testimony sufficiently responded to counsel's inquiry about how he arrived at his estimates. Counsel then raised an objection to the foundation for the VE's testimony, giving rise to the following exchange:

> ALJ: Mr. Shull, I think Mr. McBee has pretty much generally answered all your questions as to how he, what type of formulation, what he relied upon, he testified to market surveys, random sampling and he's given that it is just a, not an exact science, it's just a best estimate. I think . . . he pretty much responded to those questions.
>
> ATTY: I don't think so, Judge . . . . I mean there's really no method explained in here that anybody else can reproduce. I mean you know, we take this, we take that, we take this and you know we got a number. That's not a method, Judge. So for that reason I would object to the testimony of the [VE] as to the numbers. He has not shown a method that would be considered satisfactory. He's not

|       | shown any market surveys nor has he show that his method is peer reviewed, has been tested and can be reproduced by others and that's the touch[s]tone of evidence of this type. So I would object to that testimony, Judge. |
| ----- | ----- |
| ALJ:  | I'll take that into consideration. . . . Any other questions? |
| ATTY: | I have no further questions for the [VE]. |

(Tr. 471.)

The Court found that the ALJ failed to inquire into the reliability of the VE's methodology, sources, and conclusions as required under *Donahue v. Barnhart*, 279 F.3d 441 (7th Cir. 2002), and *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). The Court reasoned that the ALJ interrupted counsel, preventing him from inquiring into the intricacies of the VE's methodology for arriving at the hand packager estimate and then failed to engage in his own inquiry into the reliability of the VE's methods. (Order 14-15 (citing *Rasnake v. Astrue*, No. 1:08-CV-134-PRC, 2009 WL 1085969, at *20 (N.D. Ind. Apr. 22, 2009) ("[T]he case law in this Circuit is clear that once the basis of the VE's conclusions is questioned at the hearing, the ALJ's duty to make an inquiry into the reliability of those conclusions is triggered." (citing *McKinnie*, 368 F.3d at 991)); *Overman v. Astrue*, 546 F.3d 456, 465 (7th Cir. 2008) ("[I]f the basis of the VE's testimony is questioned at the hearing, then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable[.]" (internal quotation marks and citations omitted)).)

The Commissioner was substantially justified in defending against Polly's appeal. Although the ALJ erred by failing to inquire into how the VE arrived at the estimate for the hand packager job once challenged, there is at least some VE testimony explaining his general methodology. In fact, the VE informed that he uses sources such as statistics from the Indiana

4

Department of Workforce Development Labor Force and the U.S. Department of Labor, and that he looks to the Standard Occupational System classifications for Dictionary of Occupational Title numbers, from which he extrapolates his estimates. (Tr. 467-69.) He offered, "it's an estimate looking at different jobs, looking at what jobs are available in the region, looking at the labor movement or shifts from year to year, and dividing up those jobs for that category." (Tr. 469.) The VE further added, "Again the methodology is not an exact science. However, . . . it is our best estimate as to the labor force." (Tr. 469.) He explained that he also uses market surveys and works in collaboration with other VEs to conduct random sampling of jobs in the marketplace. (Tr. 470.) Thus, the VE provided an explanation with some details of the method he devised, suggesting that this is not an instance where it is clear that the VE's testimony was "conjured out of whole cloth." *Donahue*, 279 F.3d at 446. Because the ALJ had at least some basis for making a finding on the reliability of the VE's methodology, the Commissioner had a rational ground for defending its position on appeal.

Moreover, the Commissioner had a basis in law for positing that the ALJ was entitled to rely on the VE's testimony despite that it was not verified or peer-reviewed, since the Federal Rules of Evidence (and therefore Rule 702) "[do] not apply to disability adjudications, a hybrid between the adversarial and the inquisitorial models." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). Of course, once the reliability of the VE's conclusions is questioned, "the ALJ should make an inquiry (*similar though not necessarily identical to that of Rule 702*) to find out whether the purported expert's conclusions are reliable[,]" *id.* (emphasis added), and as discussed above, there was at least some testimony delving into the reliability of the VE's methodology, which the Commissioner could have believed was sufficient for the ALJ to make

his determination. And although Polly's counsel was halted from pursuing the details of particular estimates, the testimony that he was able to elicit revealed no obvious concerns or discrepancies in the VE's general methods for formulating his estimates.

The Commissioner's defense of the ALJ's evaluation of Dr. Cyran's opinion was likewise reasonable. The Court, without ruling on the issue, noted that the ALJ did not clearly articulate which of the medical opinions he was relying upon to formulate Polly's residual functional capacity, which could result in error. (Order 16 n.7 (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).) Nevertheless, the ALJ thoroughly discussed Dr. Cyran's opinion, as well as Polly's psychiatric history as a whole, penning at least two paragraphs on Dr. Cyran's treatment and dedicating roughly three pages to Polly's medical history. (Tr. 22-24.)

Moreover, the ALJ provided several reasons to discount Dr. Cyran's opinion that Polly would be frequently absent from work, including that Polly's former employer did not report any problems except occasional tardiness and stated that they would hire her back if she desired; that the records from Northeastern Center reflected that she was generally stable when on medication; and that her therapist had written a letter indicating that despite her mental illness, her symptoms were very stable with absolutely no indication of any mood or behavioral disturbances. (Tr. 21, 23-24.) Because the ALJ gave reasons supported by the record for discounting Dr. Cyran's opinion, the Commissioner had a basis in law and fact for defending its position. *See* 20 C.F.R. § 404.1527(d); *Smith v. Apfel*, 231 F.3d 433, 441 (7th Cir. 2000) (discounting a treating physician's opinion because, among other things, it was inconsistent with other substantial evidence in the claimant's record). Thus, although the ALJ could have better

articulated which medical opinion he ultimately assigned the most weight, this deficiency does not rise to the level that the Commissioner was unreasonable in defending the ALJ's analysis, particularly given that "the level of articulation required [by the ALJ] is far from precise." *Stein v. Sullivan,* 966 F.2d 317, 319 (7th Cir. 1992).

At the end of the day, the Court must make only one global determination regarding whether the Commissioner's position was substantially justified. *Golembiewski*, 382 F.3d at 724; *Godbey v. Massanari*, No. 99 C 2690, 2001 WL 1035205, at *2 (N.D. Ill. Sept. 4, 2001); *Lane v. Apfel*, No. 99 C 2640, 2001 WL 521835, at *3 n.6 (N.D. Ill. May 16, 2001) (emphasizing that a court must not count arguments, but instead focus on the "totality of the circumstances" when considering whether the Commissioner's position was substantially justified). In this case, judging the totality of the circumstances is rather straightforward, as both of the arguments the Commissioner advanced against Polly's challenges to the ALJ's decision were seemingly "substantially justified" in their own right. *See generally Purvis v. Barnhart*, No. 1:04-cv-2124 DFH VSS, 2006 WL 3354518, at *2 (S.D. Ind. Nov. 16, 2006) ("In general, . . . if the case for remand is strong and clear-cut, *Golembiewski* teaches that it will probably be an abuse of discretion to deny fees. If the case for remand is closer, and especially if it is focused primarily on an inadequate explanation of what might be a reasonable decision, *Cunningham* teaches that it will probably not be an abuse of discretion to deny fees.").

In sum, the Commissioner's position as a whole was substantially justified in this case, and as a result, Polly's request for attorney fees under the EAJA will be denied.

## III. CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's position was substantially justified. Therefore, Polly's motion (Docket # 33) and supplemental motion for attorney's fees (Docket # 41) are DENIED.

SO ORDERED.

Enter for September 3, 2009.

S/ Roger B. Cosbey<br>
Roger B. Cosbey,<br>
United States Magistrate Judge